Toomey, J.
Defendant’s motion seeks suppression of items seized during the search of his residence. The search was conducted pursuant to a warrant, but defendant asserts that the warrant was fatally flawed in two respects.
First, defendant claims that the affidavit prompting issuance of the warrant failed to provide probable cause to believe that certain items were in a certain place. Second, defendant contends that the warrant failed to particularize the items it authorized the police to seize.
The Commonwealth responds by asserting that the affidavit did present the requisite probable cause and that the execution of the warrant was accomplished in a manner curative of any shortcomings in the descriptive function of the warrant,
FACTS THE APPLICATION AND THE AFFIDAVIT
On November 24, 1992, Detective Robert Durran of the Southboro Police Department made application to the Clerk-Magistrate of the Westboro District Court for issuance of a search warrant. Attached to the application was an affidavit, of even date, in which Detective Durran made certain assertions concerning the theft of computers and equipment from Data General (“DG”) in late 1991. That affidavit informed the Clerk-Magistrate that:
1. On August 9, 1991, DG received two purchase orders for a computer and equipment from Paramount/Great Western (“PGW’) through one Henry Warner, an agent for PGW.
2. Warner, in response to a request from DG, faxed documents to DG bearing the PGW letterhead and containing telephone numbers of bank references.
3. DG called one of the numbers and spoke to one David Rothman, a Senior Vice President for Providence First Bank (“PFB”). Rothman confirmed that Warner had a substantial line of credit, drew from it in significant amounts and was prompt in his re-payments. Rothman also verified that Warner was an authorized representative of PGW with corporate addresses at 8 Park Plaza, Boston, Massachusetts and at 281 Oak Street, Westwood, Massachusetts.
4. DG, based upon the information thus acquired, extended a line of credit to PGW.
5. On August 23, 1991, DG shipped nine items of computers and equipment to PGW at 281 Oak Street, Westwood, Massachusetts. The delivery person later identified defendant as a resident of 281 Oak Street.
6. On an unspecified date, DG delivered to PGW, through one J.P. Cooper at DG’s Southboro offices, three items of computers and equipment.
7. On an unspecified date, DG shipped eleven items of computers and equipment to PGW at 8 Park Plaza— Department 405, Boston, Massachusetts.
8. Efforts by DG to collect payments for the items thus shipped were unavailing. Warner could not be located and a call to PGWs Boston phone number reached only an answering service.
9. On November 19, 1991, DG called the PFB number and reached PGW.
10. On November 21, 23 and 24, 1991, DG called Paramount Pictures in California and was informed *383 that neither Warner nor Rothman nor Cooper was known to Paramount. DG and the affiant also learned, from the Massachusetts and Rhode Island Secretaries of State, that PGW was not recorded as operating in their respective states.
11. On November 23, 1992, the PFB telephone number called by DG on or about August 9, 1991 was determined to be disconnected. A different number was listed by the Telephone Company as belonging to PFB.
12. On November 25, 1991, the affiant learned that defendant resided at 281 Oak Street, Westwood, Massachusetts.
13. In March, 1992, Timothy Trimpop, while on a service call to 281 Oak Street, observed a DG laser printer and other equipment on the premises. (The printer and equipment so observed were said to be listed in Exhibit A of the affidavit, but no such exhibit was appended.)
14. Trimpop identified defendant as the requestor of the service call.
15. On October 23, 1992, James Ready, while on a service call to 281 Oak Street, observed a laser printer and other equipment on the premises. (The printer and equipment so observed were said to be listed in Exhibit A of the affidavit, but no such exhibit was appended.)
16. Ready identified defendant as the person who had requested the service call.
17. On November 23, 1992, defendant called DG and requested service upon a computer.
18. On each occasion when defendant requested service (March, 1992; October, 1992; November, 1992), he employed the same release number to identify the computer to be serviced. That release number is the same as the release number assigned to the items sold by DG to PGW and the same as the release number corresponding to the items listed in the affidavit.
THE SEARCH WARRANT
On November 24, 1992, the Clerk-Magistrate of the Westboro District Court responded to Detective Durran’s application and affidavit by issuing a search warrant. By its terms, the warrant commanded that officers search “for the following property”:
281 Oak Street, Westwood Massachusetts . . . [description of premises omitted] . . . curtilage and motor vehicles at this address.
The warrant directed that the search was to occur “at”:
in any room, in the house where any computer, or piece of computer, as listed may be concealed from view, including the basement, including a shed located in the backyard as well as any motor vehicle on the property.
THE EXECUTION
On November 24, 1992, Detective Durran, accompanied by local law enforcement personnel and by two employees of DG, entered 281 Oak Street and served the warrant. Detective Durran had in his possession during the search the warrant and a copy of the affidavit. One of the local officers had another copy of the affidavit in his possession. The DG employees had their own list of items they believed had been stolen by defendant from their employer.
Detective Durran displayed the warrant, but not the affidavit,[1] to defendant and inquired of him whether DG equipment was in the house. Defendant responded, “Downstairs.” The officers and DG employees commenced the search in the basement. As the officers discovered computer items that might fall within the reach of the warrant, they compared each item with the listing contained in the affidavit and with the lists carried by the DG employees. The employees were present to assist the officers in identifying items found on the premises with items authorized by the warrant to be seized. The lists possessed by the DG employees contained references to items, model numbers and serial numbers.[2]
The searchers also seized checks from throughout the house; the checks were drawn payable to names known by the police to be those used as aliases by defendant. Finally, a search of a motor vehicle on the premises and certain desk drawers in the house resulted in the seizure of a number of documents including checks, social security cards, passports and the like. Some of the documents bore defendant’s name. Others did not, but all the pictures on the identification items were of the same person.
THE RETURN
The items thus seized were listed and numbered, in some instances, on Detective Durran’s return and may be divided into particular categories as follows:
CATEGORY A: Items Of Computer Equipment Unidentified As To Manufacturer
Items No. 1-7, 10-13, 17 and 20 (p. 1 of Return)
CATEGORY B: Items Of Computer Equipment Identified As Of DG Manufacture
Items No. 8, 9, 14, 15, 16, 18, 19 (p. 1 of Return)
CATEGORY C: Items of Computer Equipment Identified As Of DG Manufacture But Not Listed By Number
Fifteen Items (p. 2 of Return)
CATEGORY D: Items of Computer Equipment Unidentified As To Manufacturer And Not Listed By Number
Twenty four Items (p. 2 of Return)
CATEGORY E: Checks (three sets)
CATEGORY F: Driver’s Licenses (four)
*384 CATEGORY G: Passports (two), Credit Cards, Social Security Cards, Personal Papers
DISCUSSION
THE PROBABLE CAUSE ISSUE
Defendant claims that the affidavit fails sufficiently to establish that the items sought to be seized were probably stolen and were probably located on the premises sought to be searched. Neither claim has merit.
The affidavit recites the allegation by two named employees of DG of “the larceny of numerous computers and associated equipment.” (¶3). Those allegations are supported by an extensive recitation of facts with respect to the placement of purchase orders by a named individual (¶4), his supplying of references (¶5, 6, 7 and 8) later determined to be fraudulent (fill 1, 12, 13, 14, 15, 16, 17 and 29), the establishment of a line of credit and the delivery of goods based upon the line and the references (19 and 18), and the inability of the seller to collect payment for the items thus delivered (112). Plainly, the recitation describes a likely larceny by false pretenses and, while the facts asserted might not be sufficient to establish guilt beyond reasonable doubt, they do sufficiently establish the probability that a larceny had been committed. Commonwealth v. Byfield, 413 Mass. 426, 429-31 (1992). To condemn the affidavit because it omits to recite with definition that the purchaser has refused to pay is to elevate form over substance. Further, to rely, as does defendant, on the incongruity of the thiefs inviting the victim to service the stolen property is to seek to measure, by motion, the bonafides of the defendant, an exercise better left to the trial process.
Defendant’s alternative attack on the affidavit — viz, the observations of goods on the premises were too remote to support the conclusion that they remained there at the time the warrant was to be executed — also misses the mark. The affidavit, in its paragraph 10, asserts that nine items were delivered to 281 Oak Street on August 23, 1991. In its paragraph 20, the affidavit identifies the person who effected the delivery of “nine (9) items (described in Exhibit A)” on August 23, 1991. From those two paragraphs, we may reasonably infer that the nine items described in paragraph 10 are the same nine items contained in Exhibit A.[3] The affidavit further recites that, in March, 1992 and on October 23, 1992, the items described in Exhibit A (and, perforce, in paragraph 10 of the affidavit) were observed to be on the premises of 281 Oak Street. Additionally, the November 23, 1992, employment by defendant of the release number, linked to the DG equipment shipped to 281 Oak Street on August 23, 1991, strongly suggests the continued presence of said equipment on those premises.
The sum of these assertions is that paragraph 10 items were delivered to 281 Oak Street on August 23, 1991, and were observed to remain there through October 23, 1992. The inference that they were still on those premises on November 24, 1992 is, given the observations of their constant presence for more than one year and defendant’s November 23, 1992 use of the tell-tale code, quite compelling. Commonwealth v. Spano, 414 Mass. 178, 185 (1993); Smith, Criminal Practice and Procedure, 30 Mass. Prac. §195 n.6. I conclude, therefore, that the affidavit presents probable cause to believe that the items described in paragraph 10 were stolen and were located, at the time the warrant was issued, at 281' Oak Street.
THE PARTICULARIZATION ISSUE
Defendant challenges the lawfulness of the warrant by which the items were obtained, arguing that the warrant fails particularly to describe said items as required by the Fourth Amendment to the United States Constitution and Article XIV of the Massachusetts Declaration of Rights. His contention focuses upon two aspects of the warrant, viz, the property-to-be-seized provisions and the premises-to-be-searched terms. He correctly notes that the former omits wholly to recite what property is to be obtained by the officers; rather, it identifies the house to be searched. And, with respect to the latter, the terms refine the description of the premises to be searched contained in the former. The only reference to that which the warrant commands the officers to seize is found in the premise-description provision, to wit, “... in the house where any computer, or piece of computer as listed may be concealed from view . . .” It is the warrant’s less than specific focus upon the property to be seized that defendant claims constitutes its fatal flaw of form.
It is indeed regrettable that the warrant was prepared with so much imprecision. Not only was the identification of the premises, otherwise sufficient, mis-inserted into the property-to-be-seized portion of the warrant, but the sole reference to property-to-be-seized is contained in the premises-to-be-searched portion. And, even as so contained, the words chosen by the draftsmen of the warrant do not seek to focus attention on seizable items, but rather seek to describe searchable premises in terms of seizable property. The warrant at bar is a lamentable monument to inattention.[4]
Notwithstanding the imperfections of the instant warrant, the search and seizure it commanded maybe sustained by the resuscitating effects of the circumstances of the execution of the warrant. It will be recalled that Detective Durran carried with him a copy of the affidavit (and another searcher also bore a copy) during the search of 281 Oak Street. That affidavit did, in its paragraph 10, particularly describe the items as to which there was probable cause vis-a-vis 281 Oak Street. See Discussion, supra. The officers consulted the affidavit as they went about their search and, indeed, checked discovered items against the affidavit.[5] While the warrant did not specifically incorporate the affidavit by reference, the warrant did direct, *385 however awkwardly, the searchers to “. . . computer, or piece of computer, as listed . . ."
This court, employing the common sense and non-hypertechnical mode of analysis required of it, Commonwealth v. Truax, 397 Mass. 174, 179-81 (1986), views the quoted language as providing a constitutionally sufficient amalgam of the concededly vague “computer” focus in the warrant and the 281 Oak Street aspect of paragraph 10 of the affidavit. Cf. Commonwealth v. Freiberg, 405 Mass. 282, 299-300 (1989) (Misplacement, in the warrant, of the provisions relative to the place to be searched and the things to be seized “does not invalidate the warrant” where its directives can reasonably be discerned.). In sum, the warrant can reasonably be read to direct the searchers to computer items and the affidavit serves further to refine that direction to a point beyond the threshold of the constitutional specificity requirement. Massachusetts precedent supports that view.
We begin with Commonwealth v. Lett, 393 Mass. 141, 144-46 (1984) and Commonwealth v. Fernandes, 30 Mass.App.Ct. 335, 340 (1991), both of which permit a reviewing court to distinguish between those aspects of a search and seizure that are based upon an invalid foundation from those that are grounded upon a valid footing. Thus, at bar, after disregarding those portions of the roll of target items as to which probable cause vis-a-vis 281 Oak Street does not exist (viz, those portions of paragraph 10 referencing items “picked up at the Southboro facility” and items “sent to 8 Park Plaza”), we proceed to examine the balance of paragraph 10 and the execution to determine whether or not together they remedy the warrant’s lack of particularity with respect to items to be seized.
We know from Commonwealth v. Rutkowski 406 Mass. 673, 675 (1990), that a warrant, suffering from the ailment of non-particulariiy as to items to be seized, may be cured either by the attachment of a copy of the affidavit to the warrant at the time of execution or by the presence, during the search, of the “descriptive documents ... to guide the search and ... to inform the defendant of the limits of the search.” Accord, Commonwealth v. Taylor, 383 Mass. 272, 276-82 (1981) (an imprecise warrant may be validated either by an affixed descriptive document or one carried by, and thus limiting, the executing officers). The evidence at bar demonstrates that, as they searched 281 Oak Street, the officers carried the descriptive affidavit (including the pertinent portion of paragraph 10), employed it to confine their seizures to its boundaries and had it available to apprise defendant of its restrictions should he desire so to be apprised. I conclude, therefore, that defects in the particularity of the warrant at bar are healed by the circumstances of its execution.
CONCLUSION
Having determined that the affidavit provided probable cause to search 281 Oak Street for the items listed in that portion of its paragraph 10 which pertained to 281 Oak Street and having determined that the particularity insufficiencies of the warrant were put to right by the manner in which the execution occurred, there remains the task of determining whether any items, seized pursuant to the warrant, ought to be suppressed.[6]
The Return recites that sixty-five items of computer equipment, four driver’s licenses, three “sets” of checks, two passports, three social security cards, unnumbered credit cards and unnumbered personal papers were seized pursuant to the warrant. For the reasons expressed supra, the warrant will be viewed as expressly authorizing the seizure of the items of DG computer equipment listed in the “Oak Street” portion of paragraph 10 of the affidavit. Therefore, any DG items, listed both on the Return and in said paragraph 10, will not be suppressed.
With respect to the documentary items recited in the Return, but not included, expressly or by implication, in the warrant or in paragraph 10 of the affidavit, their suppressibility turns on whether the items appeared “plausibly related as proof to criminal activity of which (the searching officers) were aware.” Smith, Criminal Practice and Procedure, 30 Mass. Prac. §226 n.6. The information known to Detective Durran, as reflected in his affidavit, suggested the commission of a larceny by false pretenses. The affidavit suggests that, in aid of his alleged misrepresentations, defendant probably employed a number of different names. For example, one “Henry Warner” placed the initial purchase order; one “David Rothman” provided references for “Warner” and confirmed “Warner’s” line of credit with the PFB; one “Ronald Pasqualino” resided at 281 Oak Street and requested service for the computer items delivered thereto: “Pasqualino” used “John Dexter Worthington” and “Terry (Tarrence) Knight” as aliases; and one “J.P. Cooper” picked up computer equipment ordered by the same person (“Henry Warner”) who ordered equipment later delivered to 281 Oak Street where “Pasqualino” received it and ordered it serviced. Those facts provided reasonable ground for Detective Durran to believe that one person might be employing a number of identities in pursuit of his larcenous scheme and that documentation demonstrating the commonality of those identities would constitute evidence of that aspect of the crime. Accordingly, seizure of the documents listed in the final three entries on the second page of the Return was a plain view capture of items inadvertently discovered, but plausibly related to criminal activity of which the police had prior knowledge and was, consequently, lawful.[7] Commonwealth v. Cefalo, 381 Mass. 319 (1980); Commonwealth v. Accaputo, 380 Mass. 435 (1980).
*386 ORDER
For the reasons aforestated, the motion to suppress is:
A. DENIED, as to Return items listed in the 281 Oak Street aspect of paragraph 10 of the Affidavit;[8]
B. DENIED, as to Return items of a documentary nature;[9]
C. ALLOWED, as to Return items of a non-documentaiy nature and not included in the 281 Oak Street aspect of paragraph 10 of said Affidavit.[10]

Neither the application nor the affidavit was attached to the warrant.

The affidavit had relatively few references to the model and serial numbers of the items it listed.

The reader will recall that Exhibit A was not appended to the affidavit.

The court does not intend to call into question the good faith or the competence of those responsible for drafting the warrant. The court is aware of the resource deficiencies impeding both law enforcement and judicial operations and assumes that those encumbrances occasioned the instant muddled warrant. It is, however, the fervent hope of the court that the draftsmen’s future efforts will not repeat the shortcomings of the warrant at bar.

There was some testimony that discovered items were also checked against a list prepared by DG employees. Such a checking does not, of course, avail the Commonwealth since that list was not shown to have possessed the same relationship with the warrant as did the affidavit.

Ordinarily, the preliminary determinations reached supra would result in a denial of the motion. However, the vagueness of the warrant and the fact that only a portion of its reach has been sustained, require a further assessment to settle which, if any, of the items seized and listed on the return should be suppressed.

Defendant’s suggestion that the discovery of documents in the motor vehicle and in desk drawer was incongruous with a search for computers and equipment is not compelling when we recognize that many of the items contained in paragraph 10, and thus within the legitimate reach of the warrant, might well have been concealed in smaller locations.

See Categories B and C detailed at page 6, supra.

See Categories E, F and G detailed at page 6, supra.

See Categories A and D detailed at page 6, supra